UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WILLIAM H. BOADA, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-3008**<br>**C/W 13-243**<br>**Pertains to:**<br>**ALL CASES** |
| **JOHN YOUNG, ET AL.** | **SECTION: "B"(5)** |

### ORDER AND REASONS

**Nature of Motion and Relief Sought:**

Before the Court is Defendants' 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction (Rec. Doc. No. 40). In response, Plaintiffs filed an Opposition to Defendants' Motion. (Rec. Doc. No. 42). Oral arguments were heard by the Court on May 29, 2013. (Rec. Doc. No. 48). Parties then submitted Supplemental Memorandums. (Rec. Doc. No. 49 and 50).

Defendants make four primary arguments as to why the Court is deprived of jurisdiction to hear this case. First, they argue that the substance of Plaintiffs' claims do not give rise to Constitutional violations, necessitating dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). (Rec. Doc. No. 50 at 7-8). Second, Defendants argue Plaintiffs lack standing to assert claims on behalf of public housing tenants. Third, Defendants contend that Plaintiffs' claims for injunctive

1

relief are moot. Fourth, Defendants argue that the Court should abstain from judgement because "difficult questions of state law" are at issue. (Rec. Doc. No. 50 at 4) (citing *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943)). Accordingly, and for the reasons articulated below,

**IT IS ORDERED** that Defendants' Motion to Dismiss (Rec. Doc. No. 40) is **DENIED** without prejudice to reurge in the context of a summary judgement motion on all outstanding claims, with supportive documentation.

**Cause of Action and Facts of the Case:**

Plaintiffs' are former members of the Jefferson Parish Housing Authority (JPHA). They allege that Defendants, members of the Jefferson Parish Counsel, improperly removed them from their positions as JPHA members. They claim violations of the United States Constitution and the Louisiana State Constitution, and seek injunctive and monetary relief.

The procedural history in the case thus far is extensive, and does not bear heavily on the instant motion. Thus, it is only recounted briefly here. Plaintiffs instituted the instant case on December 19, 2012 following their removal by Parish President John Young from their positions as JHPA Commissioners. (Rec. Doc. No. 1). As the matter was pending before this Court, on January 27th, 2013, the Parish of Jefferson filed a temporary restraining

order in the 24th Judicial District Court of the Parish of Jefferson to enjoin Plaintiffs from participating in JPHA meetings or acting as JPHA Commissioners. (CA 13-243, Rec. Doc. No. 1-2). On February 7, 2013, Defendants filed a Notice of Removal for the state court action based on supplemental jurisdiction of the already pending action before this Court. On February 21, 2013, the two pending Federal actions were consolidated. (Rec. Doc. No. 17). Also on February 21, 2013, this Court granted a Temporary Restraining Order enjoining the Commissioners from appearing at JPHA Board Meetings until March 1, 2013 - the date on which a hearing was to be held before the Jefferson Parish Council on whether the removal of Plaintiffs from their offices was proper. (Rec. Doc. No. 18) (citing La. R.S. 40:537).

    On March 1st and 4th, 2013, the Jefferson Parish Council held a hearing on Plaintiffs' appeal. (Rec. Doc. No. 25 at 2). At the conclusion of that hearing, the Defendants voted to uphold Parish President John Young's removal of Plaintiffs for neglect of duty. (Rec. Doc. No. 25 at 3). Subsequently, on March 14, 2013, the former commissioners brought a Motion for a Temporary Restraining Order and Preliminary Injunction before this Court alleging that the Council made the decision in an illegal executive session that was in violation of the Louisiana Open Meetings Law. (Id.). Plaintiffs further requested that the

Defendants be restrained from: (1) appointing any Commissioners on the JPHA Board to replace Plaintiffs, or (2) interfering with Plaintiffs' performance of their functions as duly-appointed Commissioners of the JPHA Board at regularly scheduled meetings. (Rec. Doc. No. 25). This Court denied the motion. (Rec. Doc. No. 28). New commissioners were then appointed and the JPHA elected an acting chairman and acting vice chairman at its monthly meeting. (Rec. Doc. No. 40-1 at 4).

On April 16, 2013, Defendants filed this Motion to Dismiss for lack of subject matter jurisdiction. (Rec. Doc. No. 40). Subsequently, Plaintiff Boada requested dismissal from the case, which was granted (Rec. Doc. No. 56). All other Plaintiffs' claims remain before the Court.

**Law and Analysis**:

**I. 12(b)(1) Motion To Dismiss**

A 12(b)(1) motion to dismiss for lack of subject matter jurisdiction questions the authority of a federal court to hear the action before it. *Chatham Condo. Associations v. Century Vill., Inc.*, 597 F.2d 1002, 1012 (5th Cir. 1979). In order to ensure the court does not pass judgement on issues it has no jurisdiction over, the court must make an initial inquiry into the facts of a case to determine if it has authority over the matters to be litigated. *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994). At the onset of this inquiry,

"[t]he burden of proof . . . is on the party asserting jurisdiction." *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001) and the jurisdictional facts pled are entitled to no presumption of truthfulness if challenged. *Chatham Condo. Associations v. Century Vill., Inc.*, 597 F.2d 1002, 1012 (5th Cir. 1979). However, this is not to suggest that the burden to establish jurisdiction is demanding. In cases where "issues of fact are central both to subject matter jurisdiction and the claims on the merits . . . the trial court must assume jurisdiction and proceed to the merits." *Montez v. Dep't of Navy*, 392 F.3d 147 (5th Cir. 2004); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (stating "[i]t is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction . . ."). Ultimately, "[a] Rule 12(b)(1) motion should be granted only 'if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction.'" *Davis v. United States*, 597 F.3d 646, 649 (5th Cir. 2009) (quoting *Castro v. United States,* 560 F.3d 381, 386 (5th Cir. 2009)).

Challenges to subject matter jurisdiction brought under 12(b)(1) are to be distinguished from challenges under 12(b)(6) for failure to state a claim. Under 12(b)(6), the Court must determine "whether a cognizable legal claim has been stated." 5B

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 (3d ed.) A motion under 12(b)(1), by contrast, only requires a determination as to "whether the plaintiff has a right to be in the particular court." *Id*. Thus, when a "challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action . . . is to find that jurisdiction exists and deal with the objections as a direct attack on the merits . . . under either Rule 12(b)(6) or Rule 56." *Montez*, 392 F.3d at 150 (quoting *Williamson v. Tucker* , 645 F.2d 404, 415 (5th Cir. 1981)). To proceed otherwise would allow a party to "indirectly" challenge the merits of a case, and fail to provide "protection[s] to the plaintiff who in truth is facing a challenge to the validity of his claim." *Williamson*, 645 at 415; *see also Oneida Indian Nation of N. Y. State v. Oneida Cnty., New York*, 414 U.S. 661, 666-67 (1974) (dismissal for lack of subject matter jurisdiction improper when plaintiff's "assertion that they had a federal right . . . cannot be said to be so insubstantial, implausible, foreclosed by prior decisions . . . or otherwise completely devoid of merit as not to involve a federal controversy . . .").

   Here, Plaintiffs' have pled sufficient facts to meet their burden of establishing federal subject matter jurisdiction. Their complaint alleges several federal causes of action, including depravation of a number of Constitutional rights. (Rec. Doc. No.

1 at 19-23). The claims plausibly assert a basis for invoking the Court's subject matter jurisdiction. Thus, Defendants' 12(b)(1) motion must be denied. *Davis*, 597 F.3d at 649.

However, the Court does note that facts at this stage of the case do not appear contested. Both parties agree that the JPHA members were removed from office, and largely agree on what process was used to removed them. The only questions remaining are issues of law – whether Plaintiffs were protected by certain Constitutional guarantee and whether Defendants acted to deny them any Constitutional rights. Therefore, Defendants should reurge their request to dismiss the instant case in the context of a summary judgement motion, with supportive documentation. This will allow the Court to determine what, if any, judgement as a matter of law is appropriate. *Montez*, 392 F.3d at 150.

**II. Standing to Assert the Claims of Public Housing Tenants**

Defendants aver that the Plaintiffs have improperly attempted to assert the rights of public housing tenants in their complaint. (Rec. Doc. No. 12). The Court is unclear as to Defendants' contentions in this regard. In reviewing Plaintiffs' complaint, it is apparent that the allegations brought by Plaintiffs assert their own constitutional rights, not the rights of third-parties. *See* (Rec. Doc. No. 1 at 19-23). Claims 1 and 3 contend Defendants violated Plaintiffs' 1st and 14th Amendment rights; Claim 2 contends Defendants' deprived Plaintiffs of

property interests guaranteed them by the 5th and 14th Amendments; and Claim 4 alleges Defendants violated Plaintiffs' Equal Protection rights. (Id.). None of these claims assert the rights of parties not before the Court. Thus, the Court will make no determination on Defendants' ability to raise the claims of housing tenants at this time.

**III. Mootness of Injunctive Relief Claims**

Defendants next contend that Plaintiffs' claims for injunctive relief are moot. Specifically, they state that Plaintiffs' demand that Defendants cease interference with the exercise of their duties is impossible, because Plaintiffs have since been removed from their positions. (Rec. Doc. No. 12). This is unpersuasive. Plaintiffs' case rests on establishing unconstitutional action by Defendants in preventing Plaintiffs from carrying out their appointed duties. If Plaintiffs are successful on the merits, their claims to enjoin the alleged unconstitutional practices will continue to be a live case and controversy – eliminating any mootness concerns. *See* U.S. Const. art. III, § 2, cl. 1; *Knox v. Serv. Employees Int'l Union, Local 1000*, 132 S. Ct. 2277, 2287 (2012) ("A case becomes moot only when it is impossible for a court to grant *any* effectual relief whatever to the prevailing party.") (emphasis added) (internal citations omitted).

**IV. *Burford* Abstention**

In general, federal courts must hear those cases which Congress has given them authority to hear. *Cohens v. Virginia*, 6 Wheat. 264, 404 (1821) (federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not"). That being said, the *Burford* abstention doctrine holds that where sufficient state-court review is available, federal courts will not interfere with the work of state administrative agencies:

> (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989) (quoting *Colorado River Water Conservation Dist. v. U. S.*, 424 U.S. 800, 814 (1976)); *see also Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996).

Although *Burford* abstention allows for federal courts to avoid intruding on state matters, the Supreme Court has cautioned against its overuse. In *McNeese v. Bd. of Ed.*, the Court refused to abstain in a challenge to a segregated school system, despite the fact that a state administrative remedy was available. 373 U.S. 668, 674 (1963). The Court found the plaintiffs had alleged a federal cause of action that was not "entangled in a skein of state law that must be untangled before the federal case can proceed" thus making it "immaterial whether [defendants's]

9

conduct is legal or illegal as a matter of state law." *Id.* The Court further clarified the doctrine in *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, noting "[w]hile Burford is concerned with protecting complex state administrative processes from undue federal interference, it does not require abstention whenever there exists such a process . . ." 491 U.S. 350, 362 (1989).

The Fifth Circuit has recognized five factors for a court to weigh in determining whether abstention is appropriate:

> (1) whether the cause of action arises under federal or state law (finding abstention inappropriate where the case did not involve a state-law claim); (2) whether the case requires inquiry into unsettled issues of state law, or into local facts; (3) the importance of the state interest involved; (4) the state's need for a coherent policy in that area; and (5) the presence of a special state forum for judicial review.

*Sierra Club, Inc. v. Sandy Creek Energy Associates, L.P.*, 627 F.3d 134, 144 (5th Cir. 2010) (quoting *Wilson v. Valley Elec. Membership Corp.*, 8 F.3d 311, 313 (5th Cir. 1993)).

Here, the factors decidedly point away from abstention. The causes of action predominately arise under federal law – 42 U.S.C. § 1983 and various Constitutional provisions. Although true that Plaintiffs contend violations state law, *see* (Rec Doc. No. 1 at 21-22) (alleging violations of the Louisiana State Constitution and Louisiana Housing Authority Laws), the primary relief sought is for violations of federal law.

Further, there are no unsettled issues of state law present. On this point, Defendants contend that Plaintiffs had a right to appeal their removal to a state court. Defendants contend this is enough to force abstention. However, the fact that a state court may have authority to review a state based claim does not remove jurisdiction from federal courts asked to decide issues of federal constitutional law. *McNeese*, 373 U.S. at 674. Defendants do not contend that there are any undecided issues of state law this Court would be required to resolve in the instant case, thus this factor dose not counsel in favor of abstention.

Similarly, the state interest involved appears slight from an abstention standpoint. Unlike the majority of cases where abstention has been approved, the instant case does not involve a state regulatory agency charged with overseeing a major portion of a state's economy. *See*, *e.g.*, *Burford v. Sun Oil Co.*, 319 U.S. 315, 320 (1943) (approving abstention where state commission was in place and where natural resources making up a substantial portion of state economic revenue was at issue); *Alabama Pub. Serv. Comm'n v. S. Ry. Co.*, 341 U.S. 341, 349 (1951) (abstention proper where state regulatory structure was in place to regulate railroad passenger service in the state). Any decision from the Court in the instant case will not disturb important local necessities or disrupt the state's interest in maintaining

11

coherent policies. Thus, is abstention improper.

Accordingly, and for the reasons articulated above,

**IT IS ORDERED** that Defendants' Motion to Dismiss (Rec. Doc. No. 40) is **DENIED** without prejudice to reurge in the context of a summary judgement motion on all outstanding claims, with supportive documentation.

New Orleans, Louisiana, this 22nd day of October, 2013.

_____
UNITED STATES DISTRICT JUDGE